HUNT, Ch. J., MASON, WOODRUFF and MURRAY, JJ., concurred with JAMES, J., for affirmance.

GROVER and DANIELS, JJ., with LOTT, J., for reversal.

Judgment affirmed.

---

SAMUEL B. CAMPBELL, Executor, etc., Respondent, *v.* THE CYPRESS HILLS CEMETERY, Appellant.

Several persons organized, the defendant, as a cemetery association, under the act (chap. 133 of the Laws of 1847) authorizing the incorporation of rural cemeteries, and made themselves its trustees for the first year; one of their number being at the time the owner of 120 acres of land. This land was purchased from him by the association, at the actual price of about $20,000; but by agreement between the trustees, a consideration was inserted in the deed of $500,000, and for the balance over the $20,000, to wit, $480,000, bonds were issued by the association, which were distributed among the trustees. These were subsequently surrendered and new bonds, not negotiable in form, of smaller amounts each, but the same in the aggregate, were substituted in their place. Several years after, the plaintiff found one of these bonds among the papers of his testator, who was not one of the original trustees, and it did not appear how he became

the holder. The plaintiff applied to the association, and received from them another bond in place of the one so found, which he surrendered up. Interest upon the substituted bond had been paid by the defendant some years. In an action brought to recover the amount payable in the bond—*Held*, that it was void, both from an entire want of consideration for the original bond, for which it was substituted, and on account of the fraud in the original issue of the bonds by the original trustees to themselves.

*Held*, further, that there being no proof as to how the plaintiff's testator became the holder of the bond found among his papers, and it not being negotiable in form, the plaintiff stood in no better position than the trustee to whom the original bond was issued; nor did he gain any additional rights by procuring from the present managers of the defendant a new bond of a different form, in the place of the one delivered up.

(Cause argued June 16th, 1869, and decided September 23d, 1869.)

THIS appeal is by the defendant from an order of the Supreme Court in the first district, reversing a judgment in favor of the defendant, and granting a new trial.

The action was brought upon a bond purporting to have been given by the defendant to the plaintiff as the executor of Samuel Starkweather, deceased, for the payment of $2,500 and interest; and the cause, after issue joined, was referred to and tried before HENRY NICOLL, as referee, and he gave judgment for the defendant. Upon appeal, the General Term (MULLIN, J., dissenting) ordered a new trial, both upon questions of law and fact, and thereupon this appeal from the order is taken by the defendant.

The leading facts disclosed on the trial are as follows:

On the 29th of July, 1848, the defendant was incorporated as a rural cemetery, under the general act of April 27th, 1847. The first trustees were Caleb S. Woodhull, Abraham N. Van Wyck, Mr. Blank, Edwin Williams, Charles Edward Lester, and Dr. Mills. Mr. Woodhull was made president, and the meeting of the trustees was held at his office.

Mr. Van Wyck, one of the trustees, was at the time the owner of about 120 acres of land, which he sold to the cemetery for $20,000. The property was at the time subject to a mortgage of about $10,000, which was to be assumed by the cemetery, and the balance of the purchase money was

to have been paid out of the proceeds of the sales of cemetery lots, or by a direct conveyance of the lots to him. The value of the farm did not exceed $20,000.

A bond for the balance of the purchase money (beyond the prior incumbrance, $9,720.70), was the first given, and it was canceled on the 31st day of October, 1848, by Van Wyck receiving a conveyance of 485 cemetery lots, at twenty dollars each.

Although the value and purchase price of the farm of Van Wyck was only $20,000, the trustees, among themselves, agreed that the consideration of the deed should be $500,267.70; and that besides providing for the payment of $20,000 purchase money, the cemetery should issue bonds to the amount of $480,000 (being eight bonds of $60,000 each) which should be divided between the trustees. These bonds were afterward divided into bonds of $5,000 each. No consideration of any kind, was ever paid to the cemetery for the issue of bonds to the amount of $480,000, or the smaller bonds into which they were subsequently divided.

The deed, with the consideration of $500,265.70, dated October 17th, 1848, although duly acknowledged, was never recorded. In August, 1848, the trustees took measures to advertise the cemetery to the public, and to make such improvements as were thought to render it "inviting to the buying public."

In September, of the same year, an entrance and a lodge was erected, and a statue of "immortality" put up. The bond in suit, results from the issue of $480,000. It comes from a bond of $5,000 held by Starkweather, and another person (Child), and is in fact, the successor of one of the bonds for $60,000 given without consideration.

The bond for $5,000 was found by the plaintiff, as the executor of Starkweather, among his papers, and it seems that, desiring no further partnership with Childs, he proposed to divide the bond, and take one for $2,500, which was given to him as executor by the cemetery, and this is the bond in suit.

The original trustees sold out and resigned in 1850, and

were succeeded by the present board, who found the entire issue of the bonds to the amount of $480,000 outstanding. They were, under some arrangement, all surrendered, except the one held by Starkweather. The original bonds were conditioned to be paid only out of the profits of the cemetery, and were only assignable except upon the written consent of the cemetery. The Starkweather bond had no such conditions, and was payable in money, and interest was in fact paid upon it. At the time the bond was given, nothing was said as to the validity, or invalidity of the original bonds, and it did not appear that any interest was due. Nor did it appear from whom Starkweather got the $5,000 bond, or that he ever gave anything for it, and it was not negotiable in form.

*John H. Reynolds*, for appellant, cited, *Cumberland Coal Co.* v. *Skinner* (30 Barbour, 553); *Gardner* v. *Ogden* (22 N. Y. R., 327); *Hodges* v. *City of Buffalo* (2 Den., 310); 3 Comstock, 430; 24 Howard R., 1; *York & North R. R. Co.* v. *Hudson* (16 Beavan, 485 to 496); *Bush* v. *Lathrop* (22 N. Y., 335); *People* v. *Bostwick* (32 New York, 445).

*Douglass Campbell*, for respondent, cited, *Olcott* v. *Tioga R. R. Co.* (27 N. Y., 567); *N. Y. C. Ins. Co.* v. *National Ins. Co.* (20 Barb., 471); *Johnson* v. *Bennett* (39 Barb., 237); *Campbell* v. *Walker* (5 Vesey, 678); *Davoue* v. *Fanning* (2 Johns., 261); *Whichcote* v. *Laurence* (3 Vesey, 470) *n.*; 12 Vesey, 355; Story on Agency; *Masson* v. *Bovet* (1 Den., 69); *Bronson* v. *Wiman* (4 Seld., 182); Chitt.* on Contr., 408; *Minturn* v. *Main* (3 Seld., 220, 227); *Bergen* v. *Bennett* (1 Caine's Cas., 19); 2 Kent, 516, *n.* 10th ed.; *Campbell* v. *Fleming* (1 Ad. and Ell.); Angell and Ames on Corp., 304, 8th ed.; *Fleckner* v. *Bank of U. S.* (8 Wheat., 363); *Essex Turnpike* v. *Collins* (8 Mass., 299); *Moss* v. *Rossie Lead Co.* (5 Hill, 137); *Mechanics' Bank* v. *Seton* (1 Peters, 309); *Fulton Bank* v. *Canal Co.* (4 Paige, 127); *Newberg* v. *Garland* (31 Barb., 121); *Morse* v. *Switz* (19 How., 275); *Bissell* v. *Mich. S. & N. Ind. R. R. Co.* (22 N. Y., 258); *Russell* v. *Cook* (3 Hill, 504); *Downing* v. *Blanchard*

(12 Wend., 381); *Stewart* v. *Ahrenfeldt* (4 Den., 189); *Burnpas* v. *Platner* (1 John. Ch., 219).

GROVER, J. The order of the General Term reversing the judgment in favor of the defendant, entered upon the report of the referee, states that it was made upon errors both of law and fact. This makes it the duty of this court to determine whether the judgment should have been reversed upon either ground. (Code, § 228.) The seal upon the bond was presumptive evidence only of a sufficient consideration, subject to be rebutted in the same manner and to the same extent as if not sealed. (1 R. S., 406, § 77.) This made the evidence given, showing the origin and consideration of the bond, competent. From that evidence it appeared that the defendant was duly incorporated in 1848, under the provisions of the act of 1847, entitled "An act authorizing the incorporation of rural cemetery associations." That after such incorporation, the trustees agreed, verbally, with one of their number, to purchase from him 125 acres of land, for the purposes of a cemetery, for the price of $20,000, to be paid by assuming and discharging a mortgage of something over $10,000, and by giving to the vendor the bond of the defendant for the balance. That it was further agreed by the trustees, including the vendor, that the consideration to be inserted in the deed should be $500,000, and that for the excess so stated, over and above the price of the land, eight bonds of the defendant for $60,000 each, containing a recital that the consideration thereof was a part of the purchase price of the land, should be made, which bonds should be divided among the trustees. That this agreement was carried out. The vendor conveyed the land to the defendant. The purchase price, $20,000, was paid and secured, as agreed, and the eight $60,000 bonds divided among the trustees, as agreed, one of the number receiving two, and the residue one each. That the trustees did not cause the deed to be recorded, thus keeping the transaction a secret from the public. That after consummating this transaction, the trustees proceeded to dedicate the land,

with great pomp and solemnity, for a cemetery, erecting over the entrance a statue of immortality, and to sell lots to the public. That the land was sold to the defendant for $20,000, I regard as conclusively established. That was the sum agreed upon as the price, and it was paid as agreed. The claim of the plaintiff that the land was sold for $500,000, and that the vendor made a present of the $480,000 to be shared among the trustees, is not worthy of serious consideration. It is repelled by all the testimony in the case, and would be scarcely credible if testified to by the entire seven worthy trustees. But none of them so testify. It was further proved that the trustees, afterward pursuant to resolutions passed by them, surrendered up and caused to be canceled the sixty thousand dollar bonds, and issued to themselves severally, the amount so surrendered respectively, in bonds of five thousand dollars each; that the plaintiff, after the death of the testator, found among his papers one of these last bonds, one-half of which was claimed by another person. The plaintiff thereupon presented the same to the trustees of the defendant, and proposed to surrender it and receive therefor two bonds of twenty-five hundred dollars each, payable one to himself and the other to the other person who claimed the one-half. This proposition was acceded to, and thereupon the bond in suit was issued to the plaintiff. The mere statement of this case determines it by applying thereto well settled principles. None of the bonds were negotiable, and the plaintiff is therefore in no better position than the trustees to whom it was issued. There was no consideration whatever for the bond for which the one in suit was substituted, and it is invalid upon that ground. There is no evidence showing how it came into the possession of the testator, or that he ever gave anything for it. This precludes all idea of any estoppel upon the defendant. To create an estoppel, it should have appeared affirmatively, that the testator paid value for it; that he took it in ignorance of its origin, relying upon the truth of representations made by the defendant to induce him to take it, and upon the faith of which he did take it. Noth-

ing of the kind was shown, and no claim of any estoppel upon the defendant was made by the plaintiff before the referee. It is claimed by the plaintiff, that the bond in suit is valid irrespective of the validity of the bond for part of which it was given, upon the ground that it was given upon the compromise of a disputed claim. The answer to this position is, that there was no evidence tending to prove any such fact ; nothing showing that the claim had ever been disputed by the defendant, or was so at the time the bond in suit was given. If any interest was remitted at that time (which does not distinctly appear), it does not appear that it was done by way of compromising and settling any controversy in respect to the claim. The counsel for the respondent insists that the purchase by the corporation of one of the trustees was not void, but voidable only at the election of the corporation, and that to avoid such purchase the corporation must reconvey the land or offer so to do. In this, the counsel is correct as he is also in the further position that the corporation must make its election in a reasonable time after acquiring full knowledge of the transaction, but his conclusion deduced therefrom, that the plaintiff is entitled to recover upon the bond is not warranted thereby. That also assumes that the $480,000 in $60,000 bonds was part of the price paid for the land. This we have seen is entirely erroneous. The price agreed to be paid for the land was $20,000. This has been paid according to the agreement. It is against the bonds taken by the trustees for their own benefit under the false and fraudulent pretense that they constituted a part of such price with which, in fact, they had nothing to do, that the defendant is endeavoring to defend. To do this, it has no occasion to reject the contract for the purchase of or the conveyance of the land. Whether it can now do this is not involved in the case. The defence of want of consideration for the bond in suit is established. But the defence founded upon the fraud of the trustees in appropriating these bonds to themselves is equally available. It is said truly that the purchasers and owners of lots constitute all

Opinion of the Court, per GROVER, J.

the quasi stockholders, and that as there were none such at the time of this transaction, they could not be defrauded. It is therefore argued that as the trustees could not defraud themselves, that there could not have been any fraud in a legal sense committed. But the transaction was a palpable violation of the seventh section of the act under which the defendant was incorporated, and a gross fraud upon every subsequent purchaser of a lot not having knowledge thereof. That section, among other things, provides that after payment of the purchase money of the lands, all the proceeds of the sales of lots shall be applied to embellishing, &c., the cemetery. The act of the trustees was designed to defeat this requirement, and was therefore void. In any view I have been able to take of the case, the plaintiff is unable to maintain any action upon the bond. The referee was therefore right in dismissing the complaint, and the General Term erred in reversing the judgment. I concur with the learned judge who delivered a dissenting opinion at the General Term in his estimate of the conduct of these trustees. The order of the General Term should be reversed and the judgment upon the report of the referee affirmed with costs.

All the judges (except HUNT, Ch. J., who did not vote), concurred. Order reversed and judgment of referee affirmed.